## A11A0005. COKER v. MOEMEKA.
### (714 SE2d 642)

BARNES, Presiding Judge.

The trial court in this custody case found the child's mother in contempt and changed custody from the mother to the father. The court also ordered that any visitation by the mother must be "supervised, described, and by court order," and terminated the father's obligation to pay the mother child support. Because the mother was not properly served, and because the trial court improperly combined a contempt motion with a change of custody motion, we reverse.

Norbert Moemeka initiated these proceedings against Befaithful Coker on June 10, 2009, with a pleading titled "emergency petition to restrain mother from moving child out of state for the second time; to modify visitation; to modify child support; and offer of father to take child should mother wish to go to school in another state." In the pleading, Moemeka alleged that Coker's house had burned down and he did not know her current address, although she had directed him to continue mailing his child support payments to her at the old address. He further alleged that he was not being allowed to visit their minor child, and that Coker had told him that she and the child were going to move out of state. He sought to have Coker restrained from moving out of state and requested that he be awarded physical custody of the child if she did so. He also sought Coker's current address and wanted his child support re-evaluated. The record includes a certificate of service verifying that Moemeka mailed a copy of the pleading to Coker at Doe Trot Trail in Douglasville, Georgia.

The record contains a "Douglas County Sheriff's Office Civil Process Activity Report" dated July 2, 2009; under "Final Status" is hand-written "house burnt [sic] down." On August 18, 2009, Moemeka moved for an order for service by publication, averring in an attached affidavit signed by his counsel that "diligent search has been made," that the petitioner attempted service at the only address he had, and that he had checked "telephone information and directories." On August 21, 2009, the trial court signed an order for service by publication, and on September 23, 2009, the superior court clerk filed a notice of publication to Coker. The notice states that on June 10, 2009, Moemeka "filed suit against you for Contempt of Court regarding visitation and the whereabouts of [h]is legitimized son," and directed Coker to file an answer in writing within 60 days of the date of the order of publication. In a letter to the clerk included in the record, Moemeka's counsel asked the clerk to forward a stamped copy of the order for publication and the notice of publication to the county's newspaper of record.

In another letter to the trial court filed on December 10, 2009,

Moemeka confirmed that the court was going to hear the case on January 12, 2010 and stated he would be "submitting additional requests for Change of Custody, and/or Modification of Child Support" that week. On December 16, 2009, Moemeka filed a "motion to request change of custody and/or modification of child support and petition for contempt for withholding child contrary to court order," with a certificate of service showing that Coker was served by mailing the document to the Doe Trot Trail address, which was Coker's burned-out house. The motion included a copy of the Douglas County Superior Court order filed in October 2004 which granted joint legal custody to both parents, physical custody to Coker, and detailed visitation to Moemeka.

On January 19, 2010, the trial court signed an order indicating that Coker had been served by publication and did not appear at a hearing on January 12, 2010. The order stated that during the hearing Moemeka "presented contempt issues regarding the Custody and Visitation Order of 2004," and showed that "the actual parenting practices by the Mother were shown not to be in the best interest of the child." The trial court then ordered that "sole custody, both physical and legal, be bestowed on the [f]ather," that any visitation by Coker had to be "supervised and by court order," and that Moemeka's child support payments to Coker be stopped.

Moemeka retrieved his son shortly thereafter from his school in Florida, and Coker moved to vacate the January 2010 order, contending it was void because she was never served with Moemeka's December 2009 motion for a change of custody, and because the change of custody request had been improperly added to the contempt proceeding instead of raised as a separate action. Additionally, she argued, the record included no affidavits establishing proper publication of the notice of Moemeka's initial June 2009 petition, and the notice that was published in the legal newspaper mischaracterized the initial petition as a suit "for Contempt of Court regarding visitation and the whereabouts of [h]is legitimized son." The published notice said nothing about a custody hearing.

The parties were scheduled for a hearing on February 23, 2010, and entered into a consent agreement on that day setting forth a temporary visitation schedule. Another hearing was apparently set for April 13, 2010, but the record does not disclose whether the court held one or not. On June 3, 2010, the trial court entered an order that was an exact duplicate of the January 19, 2010 order, finding Coker in contempt and changing custody, visitation, and support. The court made no reference to Coker's arguments regarding service or the improper combination of a contempt and custody action.

Coker, who appears pro se on appeal, argues that the trial court's order granting custody to Moemeka should be reversed because

Moemeka improperly added the custody issue to his contempt petition and because she was not served properly. We agree, for both reasons.

1. "When a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review." (Citation omitted.) *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

In a contempt proceeding, the trial court does not have authority to modify a final order of custody, which must be brought as a separate action. *McCall v. McCall*, 246 Ga. App. 770, 772 (1) (542 SE2d 168) (2000). Accordingly, the trial court erred in considering both issues in the same action and in awarding custody to Moemeka. See *Hammontree v. Hammontree*, 186 Ga. App. 819, 821 (368 SE2d 576) (1988).

2. Coker also contends that she was not served properly and was therefore denied due process. We agree that the trial court erred in granting Moemeka's motion to serve Coker by publication, and that the notice that was published failed to give Coker notice that Moemeka was seeking to change custody as well.

(a) "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Footnote omitted.) *Saxton v. Davis*, 262 Ga. App. 72, 73 (1) (584 SE2d 683) (2003).

> Because notice by publication is a notoriously unreliable means of actually informing interested parties about pending suits, the constitutional prerequisite for allowing such service when the addresses of those parties are unknown is a showing that reasonable diligence has been exercised in attempting to ascertain their whereabouts.

*Abba Gana v. Abba Gana*, 251 Ga. 340, 343 (1) (304 SE2d 909) (1983). While the quantum of evidence required to establish the exercise of due diligence may vary from case to case, "at a minimum, the decision whether due diligence has been exercised cannot be left to the movant for publication service. Instead, it is the duty of the courts to determine whether the movant has exercised due diligence in pursuing every reasonably available channel of information." (Citation omitted.) *Pierce v. Pierce*, 270 Ga. 416, 418 (511 SE2d 157) (1999). And while the trial court makes the initial decision about the legality of notice, "the appellate courts must independently decide whether under the facts of each case the search for the absentee interested party was legally adequate." Id.

In this case, the affidavit supporting Moemeka's motion for

service by publication, which was submitted by Moemeka's counsel, merely states that the sheriff unsuccessfully attempted service at Coker's last known address and that the petitioner tried to find Coker by "checking telephone information and directories." In his June 2009 verified petition, Moemeka said Coker told him to continue sending his child support payments to her former address even though the residence at that location had burned, and also told him that she was going to move out of state. His counsel indicated in letters to the clerk of court in July and December 2009 that Moemeka had Coker's cell phone number, and that despite Coker's directions to Moemeka to continue mailing his support checks to her former address, counsel was holding them because Moemeka "does not wish to leave checks in a mailbox at a burned[-]out house." Moemeka did not then indicate that letters mailed to the former address had been returned instead of forwarded. In fact, Moemeka served his December 2009 motion for a change of custody by mailing a copy of it to Coker at the former address.

After the trial court issued its January 2010 order changing custody, Coker moved to vacate the order, arguing that not only did Moemeka fail to give her notice of the proceedings by mail at her former address, but that by September 2009, she had given him her new post office box address in Florida. In his response to Coker's motion to vacate, Moemeka included an e-mail message from Coker dated August 2009, in which she asserts that her former mailing address remained valid. While Moemeka filed an addendum to his response brief in May 2010 showing that an envelope addressed to Coker at her former address had been returned as undeliverable, the envelope was returned in April 2010, which establishes nothing about the validity of the address from June through December 2009.

Moemeka himself thus established in the record that he had Coker's cell phone number, e-mail address, and mailing address. Further, according to Coker, on February 12, 2010, Moemeka removed the child from school in Florida and took him to Georgia without telling her or letting the child speak to her beforehand, which indicates that the whereabouts of the child were not entirely unknown. While Moemeka may not have had Coker's physical address, he had several means of communicating with her, which had not been exhausted before the trial court granted his request for service by publication. Under the facts and record, Moemeka's search for Coker was legally inadequate, and the trial court erred in issuing the order granting service by publication. See *Pierce*, 270 Ga. at 418; *Taylor v. Padgett*, 300 Ga. App. 314, 317-318 (1) (684 SE2d 434) (2009).

It follows that the trial court also erred in entering the finding of contempt and custody award when it lacked personal jurisdiction

over Coker due to insufficient service of process.

(b) Finally, even if the trial court had properly ordered service by publication, and Moemeka's custody action were properly before the court, the notice published in the legal newspaper failed to indicate that Moemeka had filed a custody action. OCGA § 9-11-4 (f) (1) (C) provides that when the court orders service by publication, the published notice shall contain the name of the parties, the court, *"the character of the action,"* the date the action was filed, the date of the order for service by publication, and a notice commanding that the party to be served must answer within 60 days of the order. The notice published in this case, which was only introduced into the record by Coker with her motion to vacate the custody and contempt order, states that Moemeka filed suit against Coker "for Contempt of Court regarding visitation and the whereabouts of [h]is legitimized son." Because the notice refers only to the initial contempt petition, it does not give Coker even constructive notice that Moemeka sought a change of custody.

For the reasons set forth above, we reverse the superior court's order granting Moemeka legal and physical custody of the minor child and finding Coker in contempt.

*Judgment reversed. Adams and Blackwell, JJ., concur.*

DECIDED JULY 1, 2011 —
RECONSIDERATION DENIED JULY 22, 2011.

Befaithful Coker, *pro se.*
*Elizabeth J. Nunnelley*, for appellee.